MARIE SHARP'S USA, LLC,    )
    )
         Plaintiff    )
    )
        v.    )        1:24-CV-491
    )
EVE SALES CORP. and MARIE    )
SHARP'S FINE FOODS, LTD.,    )
    )
        Defendants.    )

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

For a time, Marie Sharp's USA ("MSUSA") distributed hot sauce in the United States for Marie Sharp's Fine Foods ("MSFF"). Disagreements developed, and MSUSA sued MSFF for, *inter alia*, breach of contract and unfair trade practices in violation of N.C. Gen. Stat. § 75-1.1. MSFF filed a counterclaim and third-party complaint alleging, among other things, that MSUSA and its owners Michael and Sonia Touby committed unfair trade practices under § 75-1.1 when they intentionally infringed on MSFF's trademark rights.

MSUSA's Chapter 75 claim was dismissed at summary judgment, and a jury found for MSFF and against the Toubys and their company on MSFF's trademark claims. MSFF now moves for an award of attorney fees under N.C. Gen. Stat. § 75-16.1, based both on the asserted frivolousness of MSUSA's unfair trade practices claim and on the willfulness of MSUSA's violation of MSFF's trademarks. Doc. 121.

MSUSA's Chapter 75 claim was not frivolous and malicious, but MSUSA and the Toubys did willfully engage in trademark infringement and were unreasonable in their refusal to settle despite MSFF's multiple generous offers. The statutory grounds for attorney fees having been met, the motion will be granted. While the facts of the trademark claim were intertwined with other aspects of the dispute, that claim was not central to the litigation. Therefore, the Court, in its discretion, will reduce the fee award by approximately 50%.

## I. Fee Awards under § 75-16.1

The North Carolina Unfair and Deceptive Trade Practices Act, often referenced in shorthand as "Chapter 75," authorizes courts to award attorney fees to parties who prevail on their claims of unfair trade practices. N.C. Gen. Stat. § 75-16.1. Federal trademark infringement constitutes an unfair and deceptive trade practice.[1] *See Corolla Pool & Spa Inc. v. Corolla Brad LLC*, No. 24-CV-54, 2025 WL 2663865, at *8 (E.D.N.C. Sep. 17, 2025) (Mag. J., Order) (collecting cases); *see also* Doc. 115 at 3. Attorney fees can be awarded if "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." § 75-16.1(1). Alternatively, for claims brought by another party, attorney fees can be awarded if "[t]he party instituting the action knew, or should have known, the action was frivolous and malicious." § 75-16.1(2).

---

[1] Although it also prevailed on its Lanham Act trademark infringement claim, MSFF has not moved for a fee award under 15 U.S.C. § 1117(a). *See* Doc. 121.

2

MSUSA does not dispute that MSFF is a prevailing party as to both Chapter 75 claims. It also does not dispute the reasonableness of MSFF's requested fee for the services rendered. It only contends that the circumstances enumerated in §§ 75-16(1) and 75-16(2) are absent here, and that, in any event, MSFF should only be awarded those fees corresponding to time spent on its trademark-based claim.

## II.     MSFF's Chapter 75 Claim

The jury found that MSUSA infringed MSFF's trademark rights and that its owners, the Toubys, caused that infringement. Doc. 113 at 5. This means the Toubys are jointly and severally liable with MSUSA for trademark infringement, Doc. 115 at 3, so they are likewise jointly and severally liable for any award under § 75-16.1. *See generally Yurk v. Terra Center, LLC*, __ N.C. App. __, __ S.E.2d __, 2026 WL 764022, at *6 (2026). In the interest of readability, the Court will refer to MSUSA, Michael Touby, and Sonia Touby collectively as "the Toubys" in this section.

If their violation was willful and they unreasonably refused to settle, then MSFF is entitled to attorney fees. Because they did both, MSFF's motion will be granted.

### a.     Willfulness

The jury found that the Toubys intentionally infringed on MSFF's trademarks. Doc. 113 at 5. That is sufficient to establish willfulness. *DENC, LLC v. Phila. Indem. Ins. Co.* ("*DENC II*"), 32 F.4th 38, 54 (4th Cir. 2022). "Conduct need not be fraudulent, malicious, or grossly negligent to be willful under the UDTPA. It's enough that a party engaged in a deceptive trade practice intentionally, rather than by accident or mistake." *Id.* (cleaned up).

3

The Toubys assert that willfulness under § 75-16.1(1) "involves more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." Doc. 124 at 9 (quoting *Raleigh Offset, Inc. v. McNamara*, No. 11-CV-738, 2013 WL 2302120, at *1 (E.D.N.C. May 24, 2013)). But the Fourth Circuit has squarely held to the contrary. *DENC II*, 32 F.4th at 54.

Even if that were not so, the Toubys' infringement was in bad faith. Well after it became clear that any contractual relationship had ended, the Toubys continued to deliberately use MSFF's trademarks in graphics and decals on an MSUSA vehicle, doing so even after MSFF demanded they stop and even after they were sued for trademark infringement. *See* Doc. 127 at 102–04. Ms. Touby admitted that they used the graphics, which included a QR code to their website, to associate their company with MSFF's hot sauce and to sell MUSA's inventory. *Id.* at 103–04. The only defense offered at trial was that they kept using the trademarks because removing the decals was expensive and they hoped to work out a deal where they could continue serving as MSFF's distributor. *Id.* at 104–06. They cite no case holding that a one-sided hope for a future license or distribution agreement justifies knowing trademark infringement. Their Chapter 75 violation was willful and in bad faith.

### b. Settlement Efforts

In evaluating whether there was an "unwarranted refusal by such party to fully resolve the matter which constitutes the basis" of the suit, § 75-16.1(1), courts can take the entirety of the circumstances into account. *DENC, LLC v. Phil. Indem. Ins. Co.* ("*DENC I*"), 454 F. Supp. 3d 552, 562 (M.D.N.C. 2020), *aff'd in relevant part by DENC*

4

*II*, 32 F.4th at 54.  A court may look to a defendant's efforts to settle a matter before trial and the reasonableness of those efforts.  *See, e.g.*, *United Labs., Inc. v. Kuykendall*, 102 N.C. App. 484, 495, 403 S.E.2d 104, 111 (1991).  A court may also consider a defendant's general intractability in resolving the disputed matter.  *See Barbee v. Atl. Marine Sales & Serv., Inc.*, 115 N.C. App. 641, 649, 446 S.E.2d 117, 122 (1994).  Both parties frame their discussion of this issue in terms of the settlement of all claims, Doc. 122 at 11–13; Doc. 124 at 11–14, and the Court will take the same approach.

Early in the litigation, the Toubys were unwilling to agree to any settlement that did not require MSFF to grant them a new distribution agreement.  *See e.g.*, Doc. 124-3 at 1–2.  MSFF's attorney testifies, and the Toubys do not dispute, that at mediation the Toubys demanded $1.6 million from MSFF to settle all claims and rejected a counteroffer from MSFF to pay $100,000.  Doc. 123 ¶ 20.  During the trial, the Toubys continued to demand an unreasonable $750,000 to settle all claims, *id.* at ¶ 22, even after the Court excluded their evidence of actual damages because they had never disclosed the basis for those damages to the defendants.  Doc. 101 at 7–8.

During trial, the Court directed a verdict for MSFF against MSUSA, requiring it to pay MSFF $154,000 for unpaid hot sauce deliveries, *see e.g.*, Doc. 115 at 2 (detailing directed verdict decisions); Doc. 127 at 160–61.  The jury found for MSFF on its trademark infringement claim and, in the absence of a request from MSFF for any actual damages, awarded nominal damages.  Doc. 113 at 5–6.  While the jury concluded that MSFF had breached its contract with MSUSA, it also found that MSUSA had waived that breach, so MSUSA lost on liability and recovered no damages at trial.  *Id.* at 1–2.  Post-

trial, MSUSA and the Toubys remained intractable and continued to demand that MSFF pay them hundreds of thousands of dollars. *See, e.g.*, Doc. 124-8 at 1.

In sum, the Toubys did not prevail on any of their claims. [2] MSFF made several offers to pay the Toubys and resolve the entire case, even though the Toubys had produced no evidence of actual damages and had no real defense to the trademark claim. Yet the Toubys consistently rejected these offers and instead made irrational settlement demands untethered to the strength of their case. At trial, the Toubys continued to assert that they had done nothing wrong and that their infringement was justified because they hoped to work out a new distribution agreement with MSFF. *See* Doc. 127 at 101–05; *see also Pinehurst, Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 64, 338 S.E.2d 918, 926 (1986) (finding unwarranted refusal in part because defendants considered their Chapter 75 violation to be "an acceptable business practice"). Even now, they continue to downplay their trademark infringement. Doc. 124 at 2.

The Toubys point to early settlement discussions and their willingness to settle if MSFF would continue to give them an exclusive distributorship. *Id.* at 11. First, when the parties did seem to reach an early settlement and MSFF sold the Toubys a large amount of hot sauce at the Toubys' request, the Toubys did not hold up their end of the bargain and failed to pay for it. *See* Doc. 127 at 107–12. Moreover, these early discussions are largely irrelevant: they occurred well before MSFF incurred the attorney

---

[2] This includes MSUSA's claims against the other defendant, Eve Sales. See, e.g., Doc. 113 at Issue 5.

6

fees at issue here,[3] and the litigation continued for months after this possible resolution was off the table. At trial, the evidence was clear that MSFF had good reasons for no longer wanting to do business with the Toubys, including MSUSA's bizarre marketing of MSFF's hot sauce and its growth-stifling prices.

The Toubys' refusal to accept any one of MSFF's settlement offers and refusal to meaningfully reduce its own settlement demands, particularly after the Court excluded its evidence of actual damages, was objectively unreasonable. *See, e.g.*, *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, 747 F. Supp. 2d 568, 590 (W.D.N.C. 2010); *DENC II*, 32 F.4th at 54–55. It is fair to say that at least as of the trial, the Toubys have been motivated more by a desire to punish MSFF for terminating their agreement than by a hope of recovering actual damages.[4] Under § 75-16.1(1), MSFF is entitled to attorney fees as to its trademark infringement-based claim.

## III.    MSUSA's § 75-1.1 Claim

MSUSA asserted that MSFF engaged in an unfair and deceptive trade practice when it falsely told MSUSA it was not selling hot sauce to other U.S. outlets. Doc. 35 at

---

[3] MSFF seeks recovery of fees beginning in March 2025, Doc. 123 at ¶ 15, after venue issues were resolved. The settlement discussions on which the Toubys rely, Doc. 124 at 11-13, occurred in March and April 2024, Docs. 124-2, 124-3, and again in the late summer of 2024. Docs. 124-5, 124-6.

[4] In its brief on the pending motion, the Toubys and MSUSA continue to exaggerate the facts and play the victim, all without supporting their hyperbole with evidence. *See, e.g.*, Doc. 124 at 2 (claiming that MSFF is seeking attorney fees because it is "[d]issatisfied with merely stealing MSUSA's largest customer and successfully destroying the Toubys' livelihood (while misusing the legal system in the process))." This case from the beginning has been a breach of contract case that the Toubys have consistently and unsuccessfully attempted to turn into something more complicated.

¶¶ 74–82. Specifically, MSUSA alleged that MSFF breached the parties' 2022 distribution agreement by selling hot sauce directly to other distributors in the United States, bypassing MSUSA. *Id.* at ¶¶ 75–77. When Mr. Touby told MSFF that other companies were selling Marie Sharp's hot sauce that they had not purchased from MSUSA, MSFF told Mr. Touby that they had not been making direct sales, which was not true. Doc. 71-5 at 2. MSUSA claimed that MSFF's misrepresentation was an unfair trade practice. Doc. 35 at ¶¶ 74–82.

This claim was dismissed at summary judgment because MSUSA had "not presented evidence sufficient to create a disputed question of material fact as to reliance and injury." Doc. 101 at 3.[5] MSFF contends that MSUSA's claim was frivolous and malicious, so it is entitled to attorney fees as the prevailing party.

Under § 75-16.1, "a claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of it. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *McKinnon v. CV Indus., Inc.*, 228 N.C. App. 190, 199, 745 S.E.2d 343, 350 (2013) (cleaned up).

The evidence at summary judgment showed that Mr. Touby and MSUSA did not rely on the representations MSFF made about diverted sales. After MSFF told him no hot

---

[5] It has long been the rule that reasonable reliance is an element of a § 75-1.1 claim involving misrepresentations, just as with fraud. *See, e.g.*, *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88-89, 747 S.E.2d 220, 226 (2013) (noting that the reliance requirement "has been the law of this state for quite some time"); *D C Custom Freight, LLC v. Tammy A. Ross & Assocs.*, 273 N.C. App. 220, 221, 848 S.E.2d (2020).

sauce was being sold outside the exclusive arrangement, Doc. 71-3 at 6, Mr. Touby did not believe it and undertook his own investigation. *See id.* at 5–6. The evidence at trial confirmed that Mr. Touby undertook his own investigation into the source of the diverted product, Doc. 127 at 71–72, and he admitted that he suspected that MSFF's explanation was not truthful. *Id.* at 32.

Given that it is undisputed that MSFF was dishonest with Mr. Touby about its sales to other companies, the Court cannot say that this claim was frivolous and malicious from the get-go. And the fact that a claim ends up being "legally insufficient does not necessarily mean that it was also frivolous and malicious." *Basnight v. Diamond Devs., Inc.*, 178 F. Supp. 2d 589, 593 (M.D.N.C. 2001) (cleaned up). MSFF is not entitled to attorney fees based on this claim.

## IV.   Apportionment

MSFF requests attorney fees of $430,108.40. Doc. 123 ¶ 15. MSUSA does not contest the reasonableness of the requested fee, which covers the time spent by MSFF's attorneys on the merits of the case after venue issues were resolved. *See* First Text Order 3/6/25. The Court has reviewed the fee application and concludes that the attorney fees MSFF incurred and for which it seeks recovery were reasonable for the work performed, on a lodestar basis.

But MSUSA does contend that the fee should be limited to the amount attributable to MSFF's trademark infringement-based § 75-1.1 claim. It points out, without disagreement from MSFF, that an award of attorney fees under Chapter 75 must be apportioned unless the "claims arise from the same nucleus of operative facts and each

9

claim was inextricably interwoven with the other claims." *Whiteside Ests., Inc. v. Highlands Cove, L.L.C.*, 146 N.C. App. 449, 467, 553 S.E.2d 431, 443 (2001) (cleaned up).

MSFF's trademark infringement claim was in many ways intertwined with the rest of the disagreements between the parties. The Toubys' right to use MSFF's trademarks arose out of the contractual relationship at the center of this case. The questions of whether and how long the Toubys engaged in trademark infringement therefore turned on many of the same facts as the breach of contract and tortious interference claims. The evidence presented at trial was that of a yearslong course of dealing that formed a single, cohesive narrative, rather than a collection of discrete incidents. The Toubys' purported defense for their trademark violation also confirms that the trademark issue was bound up in the larger dispute between the parties over when, whether, and on what terms the Toubys could distribute MSFF hot sauce. Thus, MSFF's claims arose from a common nucleus of operative fact.

But even though the Toubys' trademark infringement did in large part factually overlap with MSFF's other claims, it was a relatively small piece of the puzzle in this case; the focus of the parties' dispute was on the contract-based claims, and those claims involved much attorney time that was not directly related to the trademark infringement claim. For this reason, the Court concludes it would not be fair or reasonable to grant MSFF its entire requested fee award. *See Evans v. Full Circle Prods., Inc.*, 114 N.C. App. 777, 781, 443 S.E.2d 108, 110 (1994) ("Even if the requirements are met, an award of attorney's fees under N.C. Gen. Stat. § 75-16.1 is in the trial court's discretion.").

10

MSFF maintains that it is entitled to its entire fee, and for their part the Toubys have made no effort to identify which time entries do not arise out of the common nucleus of operative fact or to provide a mechanism for the Court to do so efficiently. Requiring further briefing on apportionment would have little effect other than to increase MSFF's attorney fees and would still leave the Court in the unreasonable position of having to "parse with a scalpel each item of each time entry submitted," so the Court will simply reduce the fee award by a fixed percentage. *Taylor v. Republic Servs., Inc.*, No. 12-CV-523, 2014 WL 325169, at *8 (E.D. Va. Jan. 29, 2014) (cleaned up). Parties cannot expect trial courts to "become green-eyeshade accountants" when resolving attorney fee disputes, *see Fox v. Vice*, 563 U.S. 826, 838 (2011), and reducing the award by a fixed percentage is a reasonable alternative to identifying specific hours that should be eliminated. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983); *DENC I*, 454 F. Supp. 3d at 569.

The Court has considered a fair allocation based on the extent to which the trademark issue arose out of a common nucleus of operative fact. It has evaluated the question in light of its extensive experience with this case since the first motion was filed in July 2024, Doc. 10, through housekeeping and logistical orders of all sorts, *see, e.g.*, Docs. 16, 34, 49, 50; Text Orders 3/6/25, 3/13/25, 3/24/25, 8/22/25, 9/11/25, and through dispositive motions, Doc. 101, pretrial orders, Doc. 110, Text Order 11/11/25, and a three-day jury trial. The Court finds and concludes that MSUSA and the Toubys are responsible for 50% of MSFF's attorney fees. That is a generous reduction in favor of the Toubys, who did not prevail on a single liability issue at trial and who have been

11

unreasonable and, most recently, vindictive, in their settlement demands.  Accordingly, the fee award will be reduced by 50% to $215,100, rounded for simplicity.

**V.       Conclusion**

MSFF prevailed at trial on its trademark-based § 75-1.1 claim.  MSUSA and the Toubys willfully violated § 75-1.1, and they unreasonably refused to settle with MSFF.  Thus, MSFF is entitled to an award of attorney fees under § 75-16.1.  While that claim was inextricably intertwined with many other claims in the case, it was not the centerpiece of the parties' dispute.  Therefore, the fee award will be reduced by approximately 50% to $215,100.

It is **ORDERED** that the defendant and counterclaimant Marie Sharp's Fine Foods, Ltd.'s motion for recovery of attorney fees, Doc. 121, is **GRANTED in part**, and the plaintiff Marie Sharp's USA, LLC and third-party defendants Michael Touby and Sonya Touby **SHALL** pay Marie Sharp's Fine Foods, Ltd. the sum of $215,100 pursuant to N.C. Gen. Stat. § 75-16.1, within thirty days.

This the 4th day of May, 2026.

_____
UNITED STATES DISTRICT JUDGE

12